**UNITED STATES of America,**
**Appellee,**

v.

**Alan Martin POMS, Appellant.**

**No. 72–1965.**

United States Court of Appeals,
Fourth Circuit.

Submitted July 27, 1973.

Decided Sept. 26, 1973.

———◆———

Blair D. Howard, Alexandria, Va., on brief for appellant.

Brian P. Gettings, U. S. Atty., and K. Gregory Haynes, Asst. U. S. Atty., on brief for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

PER CURIAM:

Alan Martin Poms was arrested on March 29, 1972, and was later indicted on two counts. Count I charged possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); Count II charged possession of a firearm by a convicted felon, 18 U.S.C., Appendix, §

1202(a)(1). Poms filed a Motion to Suppress evidence seized from him at the time of his arrest and a Motion for a Bill of Particulars demanding disclosure of the identity of an informant. Both motions were denied after a hearing. The case was tried without a jury. On Count I Poms was found guilty of the lesser included offense of simple possession of cocaine, 21 U.S.C. § 844(a), and was sentenced to imprisonment for a term of one year. He was found not guilty of Count II. He appeals, assigning as error the denial of his Motions to Suppress and for a Bill of Particulars.

Federal authorities had received information from a confidential informant regarding Poms and one Gabriel D. Bobrow on several occasions in the two weeks preceding the date of Poms' arrest. The informant stated that Bobrow was heavily engaged in narcotics trafficking. The source reported also that Poms was associated with Bobrow in the latter's criminal activities and was presently and had been for several months living in Bobrow's apartment. The informant further revealed that Poms habitually carried a brown leather shoulder bag which always contained an automatic pistol.

On the basis of the information supplied by the informant a search warrant was secured for Bobrow's apartment on March 29, 1972. Approximately eight to twelve federal agents went to the building to participate in the search and, upon arriving, they encountered and arrested Bobrow and his son in an elevator.[1] The two Bobrows and the agents proceeded to the basement in the elevator. As the arrestees were being searched and given their *Miranda* warnings in the basement hallway, an adjacent elevator door opened and Poms emerged carrying a brown leather shoulder bag. An agent of the Alcohol, Tobacco and Firearms Division of the Treasury Department testified that he saw Poms as the elevator door opened, observed the shoulder bag, and noted that Poms had one hand on the zipper of the bag which was one-third open. The agent asked appellant if his name was Alan Martin Poms and upon receiving an affirmative reply took possession of the shoulder bag. When the bag was completely opened a loaded .38 caliber automatic pistol and a clear plastic bag of white crystal cocaine were observed therein. Poms was then arrested.

First, Poms claims that the cocaine should not have been admitted into evidence against him. He argues that the express purpose of the agents was to execute the search warrant for the apartment of Bobrow and that the agents' encounter with him was mere happenstance. Citing Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the defense contends that the informant's unverified tip was insufficient to provide probable cause for an arrest of Poms or a valid search of his shoulder bag.

This court need not decide whether the information provided by the informant would have been sufficient by itself to have supported an arrest or search of Poms. We are persuaded that on the facts in the record, the search of Poms' shoulder bag may be justified by the guidelines for protective searches established by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Since no arrest was effected until after the contraband was found in the shoulder bag, the validity of the arrest is dependent on the validity of the initial search and not vice versa.

■ To justify a protective search there must be compliance with the standards established in *Terry*.

---

1. The arrest of Bobrow and his son was based on the agents' observation that Bobrow was carrying a large plastic garbage bag filled with marijuana. His conviction of possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), and possession of cocaine, 21 U.S.C. § 844(a), was recently affirmed by this court. United States v. Bobrow, 474 F.2d 1343 (4 Cir. 1973).

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883.

Applying the teaching of *Terry* to the facts and circumstances here present we conclude that the protective search was justified and the federal agent's search of the shoulder bag for weapons was reasonable.[2] Here, the officers had received information from a reliable informant[3] that Poms *always* carried a weapon in his shoulder bag. The source had provided an accurate description of the bag's appearance and color. Poms was known to be an associate of Bobrow and they were sharing an apartment according to the information furnished the agents. Additionally, the officers asked Poms to identify himself before they took any further action. It is quite reasonable to assume, and there is no contrary evidence in the record, that the agent who searched the bag was of the opinion that such a prophylactic measure was necessary to avert the possibility that Poms would draw a weapon in an attempt to free Bobrow from police custody.

A similar situation was present in United States v. Del Toro, 464 F.2d 520 (2 Cir. 1972). There the police had an arrest warrant for one Rivera, a known narcotics dealer. Eight agents kept Rivera and Del Toro, who was unknown to the police, under surveillance as they left a bar. The agents closed in with drawn revolvers and ordered the two men out of Del Toro's car. A search of Del Toro for weapons was held to be justified even though, as here, he was not uncooperative and the police were present in force. As stated in *Del Toro*, it would be "unreasonable to expect them [government agents] to expose themselves to a violent escape attempt, however futile, when the limited intrusion of a pat-down would promptly defuse what officers experienced in narcotics enforcement perceived as a potentially explosive situation." 464 F.2d at 521 (footnote omitted).

We cannot distinguish the cases on the basis that Del Toro had been Rivera's companion throughout the period of surveillance whereas Poms' presence at the arrest of Bobrow may have been fortuitous. The police had ample cause to take protective measures because they had been warned by a reliable source that Poms was Bobrow's associate in crime, was then residing with Bobrow, and that he always carried a weapon in his shoulder bag.[4] Poms was potentially as dangerous to the arresting officers

2. *See* United States v. Epperson, 454 F.2d 769 (4 Cir. 1972) ; United States v. Powers, 439 F.2d 373 (4 Cir. 1971).

3. The general reliability of the informant had been established. He had furnished reliable information at least four times in the past to three different government law enforcement agencies.

4. In Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921, 32 L.Ed.2d 612 (1972), a reliable source informed police that Williams had narcotics and a loaded pistol in his car. A police officer approached the automobile and asked the suspect to open his door. When the car window was lowered the officer reached into the car and found a loaded handgun in Williams' waistband, precisely where the informant said it would be. The handgun had not been visible to the officer standing outside the automobile. The Supreme Court, citing *Terry* for the proposition that police can make a reasonable investigatory stop and limited protective search, held that the information furnished by the informant had enough indicia of reliability to justify the officers' forcible stop and protective seizure of the weapon.

when he stepped off the elevator as he would have been had he been with Bobrow when the latter was initially arrested. Since we agree that "[a]ll companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed," United States v. Berryhill, 445 F.2d 1189, 1193 (9 Cir. 1971), we see no reason why officers may not similarly engage in a limited search for weapons of a known companion of an arrestee, especially one reported to be armed at all times, who walks in on the original arrest by sheer happenstance.

■ Having concluded that this limited protective search was justified under the circumstances, we can proceed to determine whether the cocaine, observed in connection with the search for the weapon, could properly be seized and used as evidence against Poms. It is evident that the "plain view" doctrine is applicable in this situation. If a valid search is in progress and the seizure of an item in plain view does not convert the search into a general or exploratory one, i. e., the discovery of the evidence was *inadvertent*, then the "plain view" doctrine applies. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Here the protective search was valid and, although the record is not as clear as it might be, it does appear that the discovery of the cocaine was *inadvertent*. The government agent who conducted the search testified as follows.:

> "I then grabbed the bag and asked Mr. Poms for the bag, which he assisted. I removed it from his shoulder and I then placed the bag on the floor, opened the bag the rest of the way, and I observed a Walther PPK/S .38 caliber automatic in the purse.
>
> "I further observed a clear plastic bag which contained a white crystal. This packet was tied."

There is no evidence that the agent engaged in a general or exploratory search. A reasonable interpretation of the testimony would suggest that the officer opened the bag and saw the pistol and clear plastic bag simultaneously.

■ While engaged in a valid protective search, an agent inadvertently observed the cocaine. The "plain view" doctrine applies, and that contraband evidence could properly be seized and used as evidence against Poms at trial. We therefore affirm the District Court's denial of the Motion to Suppress.

■ The second ground for appeal is the claim that the lower court erred in permitting the Government to withhold the identity of the informant. We hold that the district court did not err in refusing to require disclosure.

This court has previously recognized that the Government is permitted to withhold the identity of informants when "the informant was used only for the limited purpose of obtaining a search warrant." United States v. Fisher, 440 F.2d 654, 656 (4 Cir. 1971); United States v. Pitt, 382 F.2d 322 (4 Cir. 1967); United States v. Whiting, 311 F.2d 191 (4 Cir. 1962), cert. denied, 372 U.S. 935, 83 S.Ct. 882, 9 L.Ed.2d 766 (1963). Here, since the information provided by the informer was utilized only for the lesser purpose of a protective search, failure to require disclosure was clearly proper.

Poms' reliance on Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639 (1957), is misplaced. That case is distinguishable from this one, and the facts relevant there illustrate the importance an informant must play in a case before his identity must be disclosed. In *Roviaro,* disclosure was required, but the undercover informer had taken a material part in bringing about the defendant's possession of narcotics, he had been present with the defendant at the occurrence of the crime, and he might have been a material witness as to whether the accused knowingly trans-

ported the drugs as charged. No claim is asserted here that the informant played a substantial role in Poms' criminal conduct. The motion for a Bill of Particulars was properly denied.

Accordingly, dispensing with oral argument, we affirm the judgment below.

Affirmed.