993 F.2d 1541
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Leroy J. STOKES, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Tammy Shawon CHALMERS, Defendant-Appellant.
 Nos. 92-5033, 92-5203.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993
Decided: May 20, 1993
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Durham. Frank W. Bullock, Jr., Chief District Judge; Richard C. Erwin, Senior District Judge. (CR-91-89-D)
 Argued: James G. Middlebrooks, Smith, Helms, Mulliss & Moore, Charlotte, North Carolina, for Appellant Stokes; Laurence Davis Colbert, Durham, North Carolina, for Appellant Chalmers.
 Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 On Brief: Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HAMILTON, Circuit Judge, CHAPMAN, Senior Circuit Judge, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellants Leroy J. Stokes, Jr. and Tammy Shawon Chalmers appeal their convictions and sentences, which resulted from separate jury trials, but involved the same evidence. Each was found guilty of conspiracy to possess cocaine base (crack) with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and possessing 107.2 grams of crack on May 2, 1991 with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and of 18 U.S.C. § 2. They challenge the sufficiency of the evidence to sustain their convictions, the validity of the warrant to search Chalmers' residence, the introduction of an enlarged photograph of a fingerprint, and the effectiveness of Chalmers' trial counsel.
 
 
 2
 We find no error and affirm the convictions and sentences.
 
 I.
 
 3
 Appellants contend that they were involved in a legitimate clothing business in which Leroy Stokes, who lived in New York, bought various articles of clothing and accessories in the garment district of New York City and forwarded them by mail or Federal Express to Tammy Chalmers in Sanford, North Carolina for resale. However, the evidence established, to the satisfaction of the jury, that in addition to transporting clothing, belts, handbags and other accessories, Stokes was also sending crack to Chalmers. The evidence reflected that on May 2, 1991, certain drivers who routinely delivered Federal Express packages were met by a police sergeant of Lee County, North Carolina who inquired about a package for delivery to Tammy Chalmers. The drivers were familiar with the name because they had delivered packages addressed to her at both her home and at the Central Carolina Hospital where she worked. A package scheduled for delivery to Chalmers at 703 Williams Street, Sanford, North Carolina was located. This package was about the size of a shirt box and was similar in size and weight to other packages that the drivers had delivered to Chalmers in the past. The package was left in the delivery truck, a drug dog was brought to the scene and the dog alerted to the package. The police officer took custody of the package, obtained a state search warrant and opened the package in the office of the Lee County sheriff. The package contained a woman's purse and a number of small plastic bags which contained 107.2 grams of cocaine base. Fingerprint experts were able to lift a latent fingerprint on the sticky portion of a piece of cellophane tape used to close one of the larger plastic bags. It was identified as the right thumbprint of appellant Leroy Stokes.
 
 
 4
 On the morning of May 2, 1991, a female, identifying herself as Mrs. Chalmers, called Federal Express, identified the seized package by its air bill number and asked when the package would be delivered. Inadvertently a Federal Express employee revealed to this caller that the package had been turned over to the police. Two hours later an individual identifying himself as the shipper, telephoned a New Jersey Federal Express office to ask about the package and was told the package had missed the plane and would be delivered later that afternoon. Shortly after this call was received, a third call came in from a female identifying herself as the proposed recipient of the package and inquired as to when it would be delivered. She was also advised that the package had missed the plane, but it would be delivered during the afternoon.
 
 
 5
 After the identification of the cocaine base in the package at Federal Express, Sergeant Haigler obtained three search warrants. One was to search the package and the other two were to search Mrs. Chalmers' apartment. One of the affidavits supporting the latter search warrants indicated that the resealed package would be delivered to Mrs. Chalmers at her place of employment, and the other asserted that the package would be delivered to her at her residence, and this is the one that was used to search the residence, even though delivery of the package was never completed.
 
 
 6
 Sergeant Haigler decided to attempt a delivery of the package to Mrs. Chalmers. He borrowed a delivery man's uniform and a van from Federal Express. Attempts to deliver the package at the home of Mrs. Chalmers on the evening of May 2 were unsuccessful. After dark, a surveillance team noticed a vehicle approaching Chalmers's apartment and they attempted to deliver the package, but the driver, who had gone into the apartment, would neither accept the package nor sign for it. Shortly thereafter, the automobile which the surveillance team had earlier seen began to drive away and was stopped by the officers. There were four female occupants of this vehicle and Tammy Chalmers was sitting in the front passenger seat. When asked for identification, she said she was Shawon Petty, but contended that she had no identification documents on her person. She was arrested and produced an identification in her true name.
 
 
 7
 During the search of the Chalmers apartment, immediately after her arrest, various phone bills, long distance toll records, a letter addressed to Chalmers with a return address of "A. L. Stokes, Jr., 2202 Linden Boulevard, Brooklyn, New York," and a scrap of paper were found in the living room. The scrap of paper had a number written on it which matched the air bill number for the Federal Express package to be delivered on May 2.
 
 
 8
 At trial, Chalmers testified that she and Stokes were in the clothing business and that she kept supplies of clothing in a rental storage facility and introduced photographs showing a rental storage locker full of clothing. However, on cross examination she admitted that this storage facility had not been rented until the day after the search of her residence. She introduced a series of receipts which she said constituted records of clothing she had purchased in New York over a course of 14 months, but the receipts were all from the same pad and had sequential serial numbers. She testified that she wired money to Stokes on a regular basis to repay him for clothing. Evidence from a Western Union employee showed frequent wires of cash from Chalmers to Stokes totaling $25,000 over the course of 24 months, and the telephone records reflected numerous calls to Stokes in New York.
 
 
 9
 Appellant Stokes took the stand at his trial and testified as to his business arrangements with Chalmers. He admitted shipping the package on May 1, 1991 from Fort Lee, New Jersey and claimed that it only contained a woman's purse, some jewelry, and a $100 bill, but no drugs. He admitted using the name J. Chalmers in this transaction. He could not explain who had put more than $20,000 of crack in the package before it arrived in Sanford.
 
 II.
 
 10
 Both appellants challenge the sufficiency of the evidence. Chalmers contends that there was inadequate proof of her knowing participation in a conspiracy to distribute illegal drugs and Stokes argues that even though his thumb print was discovered on the scotch tape sealing the plastic bags holding the drugs, this was not adequate to support a finding of guilt beyond a reasonable doubt.
 
 
 11
 In considering the sufficiency of the evidence to support a guilty verdict, we must examine all the evidence, including circumstantial evidence. The evidence must be viewed in the light most favorable to the prosecution, and the verdict must be sustained if any rational trier of fact could have found proof of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 12
 The evidence showed that for more than a year Stokes had been shipping packages from New York to Chalmers in Sanford, North Carolina. These shipments had been made about twice per month and the shipments were similar in size and weight to the package intercepted on May 2 which contained 107.2 grams of crack. During this time, Chalmers was wiring money by Western Union and these transmissions totaled over $25,000 over the period of the shipments.
 
 
 13
 The evidence also reflected that when the May 2 package was not delivered before noon, which was the usual delivery time, inquiries were made of Federal Express by Chalmers who was advised that the police had intercepted the package. Chalmers already had the package's air bill number and the air bill number was found on a piece of paper in her living room. The record also reflected that Stokes had called Federal Express and been advised that the package had missed the plane. The jury could have concluded that Chalmers was aware that the police had the package and she so advised Stokes, and she avoided her apartment until after dark. Her mother refused delivery of the package, even though Chalmers was sitting next to her in the automobile. At the time the automobile was stopped, Chalmers gave a bogus name.
 
 
 14
 Stokes acknowledged being the shipper of the package and acknowledged using the name Joe Chalmers as shipper. The evidence was sufficient to establish that Chalmers and Stokes were working together and had formed a conspiracy to possess, with intent to distribute, crack and that they possessed crack with intent to distribute. Chalmers argues that she never directly had possession of the package and the crack, but she did exercise dominion and control over it by directing Federal Express as to when and where to deliver it, and this is sufficient to establish constructive possession.
 
 
 15
 The credibility of both Chalmers and Stokes was eroded by the incongruous testimony given by each when they took the stand. Stokes' credibility was also damaged by a prior drug conviction.
 
 III.
 
 16
 Appellants argue that the search warrant of Chalmers's residence at 703 Williams Street, Sanford, North Carolina, was not supported by probable cause and was an over broad, general warrant that violates the Fourth Amendment. She asserts that the package containing the crack was never delivered to her residence, and absent the delivery and presence of the drugs at her residence, there was no probable cause to believe that she possessed crack or was in any way involved with illegal drugs.
 
 
 17
 These arguments are unpersuasive. The language of the warrant is not so general that it runs afoul of the Fourth Amendment. In United States v. Washington, 852 F.2d 803 (4th Cir.), cert. denied, 488 U.S. 974 (1988), we held that a warrant authorizing the seizure of "heroin, a quantity of drug paraphernalia, papers, notes, bank records, identification documents and other items of evidence" was sufficiently particularized. Id. at 805. Washington also answers appellant's argument that there was no probable cause because at the time the warrant was issued the drugs had not been delivered and were not located at the premises to be searched. "When evidence ... is on a sure course to its destination, as in the mail, the prior issuance of a warrant is permissible." Id. at 804 (citations omitted).
 
 
 18
 Sergeant Haigler obtained two search warrants for the residence. One was supported by an affidavit that delivery of the crack package would be made to Central Carolina Hospital, where Chalmers worked, because Chalmers had called Federal Express and asked for delivery to the hospital and not to 703 Williams Street, to which the package was addressed. The other affidavit stated that delivery of the package would be made to 703 Williams Street about 5:00 p.m. on May 2, 1991. Both warrants authorized a search of:
 
 
 19
 [t]he premises of 703 Williams Street in Sanford, North Carolina, any persons being in or around the premises, any vehicles which belong to the persons occupying the described location, any records which indicate residency and/or ownership of the described location, and any phone records or banking records of the occupants of the described location.
 
 
 20
 The affidavits sufficiently demonstrate probable cause without actual delivery. The package of crack had been intercepted and the 107 grams of crack properly tested and identified. The package was addressed to Chalmers, who was expecting the package and knew it was coming because she had requested a change in the place of delivery. Also, the package "was on a sure course to its destination." Id.
 
 
 21
 Affidavits for search warrants are tested and interpreted in a "commonsense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108 (1965). The amount of crack (107 grams) would indicate that it was more than would be normal for personal consumption, and therefore the crack was intended for sale and distribution. If distribution was intended, then the Williams Street premises probably contained records of drug trafficking.
 
 IV.
 
 22
 Chalmers argues that the government's introduction during its rebuttal of a laser-amplified 8-1/2 inch by 11 inch photograph of Stokes's latent fingerprint violated due process and Rule 16 of the Federal Rules of Civil Procedure, because prior to trial, in response to appellant's motion, the government had produced only a one inch by one inch photograph of the same fingerprint. Chalmers's attorney had requested an enlargement at the time the smaller print was made available, but no enlargement had been made by the government at that time. After the defendant's fingerprint expert had attacked the government expert's opinion that the fingerprint was that of Stokes, the prosecution had the enlarged photograph prepared over a weekend recess in the trial, and it then recalled its expert in rebuttal. By use of the enlarged photograph, the government's expert could better explain to the jury the various points of identification in the fingerprint that had been used to identify Stokes. The witness supported his opinion by use of this visual aid.
 
 
 23
 There was nothing to prevent the defendant from having the photograph of the print enlarged prior to trial, so that her expert would have the benefit of the same visual aid. The government was not required to enlarge the photograph at the defendant's request. In United States v. Taylor, 857 F.2d 210 (4th Cir. 1988), the defendant requested the results of hair fiber comparisons, but the government had not performed such comparisons or tests, and we held that there was no obligation on the government to do so such testing. Id. at 215. The same reasoning applies to the request for the enlarged photograph.
 
 
 24
 Rule 16 allows the defense to inspect and copy documents, photographs and tangible objects in the possession, custody or control of the government when the same are intended for use by the government as "evidence in chief" at the trial. The enlargement of the fingerprint photograph is not covered by the rule, it was not in existence prior to trial and it was not created or used during the government's case-in-chief.
 
 
 25
 There was no abuse of discretion by the trial judge in allowing the enlarged photograph to be used in rebuttal.
 
 V.
 
 26
 Chalmers claims that her attorney "was unable to effectively defend her because the government's untimely production of the laser amplified photograph after the defendant had rested in the case precluded defense counsel from making meaningful use of the photograph in preparing and presenting its case." She also cites, as evidence of her counsel's ineffective representation, his failure to obtain the name of the government's informant and failure "to move for a nonsuit at the close of all of the evidence."
 
 
 27
 Normally we do not consider claims of ineffective assistance of counsel on direct appeal, but the present claims are so lacking in merit that we will address them now and not await the filing of a petition under 28 U.S.C. § 2255.
 
 
 28
 The Sixth Amendment guarantees the right of counsel in federal felony prosecutions. Johnson v. Zerbst, 304 U.S. 458, 463 (1938). This right to counsel includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). Chalmers's attorney states that although the burden is usually upon a defendant to prove that counsel's representation fell below the objective standard of reasonableness, and but for such counsel's unprofessional conduct, it was reasonably probable that Chalmers would have been acquitted, he is raising this issue on direct appeal because he was prevented by the prosecution's misconduct from preparing and presenting an effective defense, because he did not know of nor did he anticipate the use of the enlarged fingerprint photograph in the government's case on rebuttal.
 
 
 29
 As we have held in Section IV above, there was no misconduct on the part of the government in the introduction of the enlarged photograph, and there was no abuse of the trial court's discretion in admitting this exhibit. At oral argument, defense counsel explained that if he had known the government was going to use the enlarged photograph in rebuttal to strengthen the testimony of its expert, and that such photograph would destroy the credibility and the opinion of his expert, counsel would not have used his expert and would have approached the case in a different way. Even if this action by the attorney represents an error in judgment or trial tactics, it does not reflect an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Trial counsel objected to the introduction of this evidence but his objection was overruled. His failure to prevent the admission did not deprive the defendant of a fair trial. If defense counsel was in error in not anticipating the use of this exhibit, the government attorney was also in error in not anticipating that defendant would present an expert that would damage the testimony of the government's expert to the extent that he required rehabilitation on rebuttal. However, this does not qualify as constitutional ineffectiveness and does not prevent the defendant from obtaining a fair trial which Strickland defines as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685.
 
 
 30
 As to the identity of the informant, the defense is not entitled to this information. Nevertheless, counsel sought diligently to identify the informant to whom reference is made in the original search warrant for the package. Although his efforts were unsuccessful, this does not demonstrate ineffectiveness of counsel. This is particularly true when the government declined to identify the informant on the basis of informant privilege, which it may legally do. As we held in United States v. Poms, 484 F.2d 919 (4th Cir. 1973),"the Government is permitted to withhold the identity of informants when'the informant was used only for the limited purpose of obtaining a search warrant.' " Id. at 922 (citations omitted).
 
 
 31
 The failure of counsel to make a Rule 29 motion at the conclusion of the evidence did not affect the outcome of the case nor undermine confidence in the jury's verdict. We have held in Part II hereof of this opinion that the evidence was sufficient to support the guilty verdict. Failure to make a motion that would obviously have been denied is not evidence of ineffective assistance of counsel.
 
 
 32
 For the reasons stated herein, the convictions and sentences of both appellants are affirmed.
 
 AFFIRMED