**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4239

GWENDOLYN DAPHINE HICKS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-407)

Argued: March 6, 1997

Decided: September 4, 1997

Before HAMILTON and WILLIAMS, Circuit Judges, and KISER,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Christopher Dean Latsios, Fairfax, Virginia, for Appel-
lant. Mark Sterling Determan, Special Assistant United States Attor-
ney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey,
United States Attorney, Rebeca Hildalgo Bellows, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

On the morning of July 2, 1995, Virginia State Trooper Frank Dover observed a 1981 Mercury traveling 72 miles per hour in a 55 mile per hour speed zone. James Arthur Ford was the driver of the vehicle and appellant Gwendolyn Daphine Hicks was the vehicle's only passenger. Upon stopping the vehicle pursuant to a routine traffic stop, Trooper Dover discovered that neither Mr. Ford nor Ms. Hicks possessed a valid driver's license. Because neither Mr. Ford nor Ms. Hicks could lawfully drive the vehicle from the scene, Trooper Dover determined that the vehicle had to be towed and stored for safekeeping. In accordance with Virginia State Police procedures governing vehicle impoundment and inventory searches, Trooper Dover proceeded to inventory the vehicle on the roadside prior to it being towed.

While inventorying the contents of the trunk, Trooper Dover found two overnight bags, one of which contained a box of 9 millimeter ammunition and a loaded 9 millimeter semi-automatic handgun. After discovering the handgun, Trooper Dover conducted a pat-down search of Ms. Hicks and searched her purse to ensure his personal safety. Upon opening the purse, Trooper Dover saw a semi-clear white bag inside the purse. Through the semi-clear bag Trooper Dover saw a film canister, purple bags, and some large white-colored rocks. Based on his training and experience, Trooper Dover believed the rocks were crack cocaine. Trooper Dover then placed Ms. Hicks under arrest for possession with intent to distribute crack cocaine. The suspected crack cocaine was subsequently taken to the Drug Enforcement Administration's Mid-Atlantic Regional Laboratory for analysis. The chemical analysis revealed that Ms. Hicks' bag contained a total of 21.771 grams of cocaine.

2

II.

Ms. Hicks first challenges the district court's decision to deny her motion to suppress the crack cocaine seized from her purse. She claims the trooper did not have reasonable suspicion to conduct a protective search and, even if he did, the drugs were not in plain view when the purse was opened. We review the district court's determination of reasonable suspicion de novo, but we will not overturn the district court's factual findings unless clearly erroneous. United States v. Perrin, 45 F.3d 869 (4th Cir.), cert. denied , 515 U.S. 1126 (1995). Applying this standard, we agree with the district court that this evidence should not have been suppressed because the search was conducted pursuant to a valid protective search. The officer had a right to conduct a protective search of Ms. Hicks as a passenger in the car. See Maryland v. Wilson, 117 S. Ct. 882 (1997) (concern for officer safety permits officer making traffic stop to order passenger out of car). Upon finding a loaded semi-automatic handgun in the trunk of the car, Trooper Dover immediately conducted a pat-down search of Ms. Hicks' person and opened her purse. He conducted this search based on the reasonable suspicion that Ms. Hicks might have been armed with a weapon.

In United States v. Poms, we adopted the principle that officers may conduct a limited search for weapons of a known companion of an arrestee who is within the vicinity of the arrest. 484 F.2d 919 (4th Cir. 1973). In Poms, we stated, "[w]e agree that all companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory pat-down reasonably necessary to give assurance that they are unarmed." Id. at 922 (citation and internal quotation omitted). In Poms, we upheld the protective search of the shoulder bag carried by a known companion of the arrestee, who was emerging from an elevator near the arrest scene. In the present case, upon discovering the loaded handgun, Trooper Dover had reason to be concerned about his personal safety. He was justified in conducting a limited search of Ms. Hicks' purse in order to assure himself that she was not carrying a weapon. Although the objective of the search was to determine whether Ms. Hicks possessed any weapons, the seizure of the crack was also proper. The search of the purse was a valid protective search. Upon opening the purse the crack cocaine was in plain view. When

3

an officer engaged in a valid protective search finds contraband in plain view, the evidence may be properly seized and used as evidence. See id. Accordingly, the district court did not err in denying Ms. Hicks' motion to suppress.

III.

Ms. Hicks next challenges the district court's refusal to allow her to inquire on voir dire whether anyone on the jury venire lived in a neighborhood presently experiencing a problem relating to drugs. Generally, district courts have broad discretion in conducting the voir dire examination. United States v. Griley , 814 F.2d 967, 974 (4th Cir. 1987). The court is not required to ask every question presented. United States v. Gugliemi, 819 F.2d 451, 456 (4th Cir. 1987) (in pornography case, court refused to ask questions relating to jurors' personal reactions to specific sexual activity), cert. denied, 484 U.S. 1019 (1988). Moreover, "[t]he burden is on the defendant to show that the trial court's conduct of voir dire prejudiced him, and led to an unfair trial." Griley, 814 F.2d at 974. We reviewed the district court's decision to refuse inquiry into certain matters on voir dire under an abuse of discretion standard. United States v. Lancaster, 96 F.3d 734 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 967 (1997).

Ms. Hicks proposed the following voir dire request: "Does anyone reside in an area or neighborhood which is presently experiencing a problem relating to the usage or sale of narcotics?" The district court denied the request, explaining that the question proposed was encompassed by the court's previous questioning. The district court had asked the following question of jurors:

> Ladies and Gentlemen, have any of you or your immediate family members or close personal friends ever been the victim of a crime that was related to the use of narcotics or related to or involved a person who has been using drugs to your knowledge?

In addition to this question, the district court asked a more general question regarding a possible prejudice regarding drugs:

4

> This case involves crack cocaine, and the issue of drugs in American society is a very sensitive issue about which a lot has been written and a lot has been read. And there have been TV specials, and all that, on it.
>
> Do any of you feel from any personal experiences, that is whether you have a family member with a drug problem, whether you have worked in an advocacy group or any of that kind of life experience, that you have formed an opinion about drugs in American society that would make it, in any respect make it difficult for you to be completely impartial in judging the issues before us in this case today.

Because the questions asked by the district court essentially encompassed the question Ms. Hicks sought to have the district court ask, we find that the district court did not abuse its discretion in refusing to ask the question proposed by Ms. Hicks.

IV.

The third issue Ms. Hicks raises on appeal is whether the district court abused its discretion when it refused to allow voir dire on the presumption of innocence. In United States v. Robinson, 804 F.2d 280 (4th Cir. 1986), we specifically addressed the refusal to give a voir dire instruction on the presumption of innocence:

> The claim of error because the trial judge refused to specifically ask the full venire if they understood and would abide by the court's instructions on reasonable doubt, presumption of innocence, and burden of proof has its origin in United States v. Hill, 738 F.2d 152 (6th Cir. 1984). Every other circuit which has considered this exception, including our circuit in United States v. Carter, 772 F.2d 66 (4th Cir. 1985), has refused to follow Hill. The trial jury in the present case was twice instructed on these points of law, and this was quite sufficient.

Id. at 281.

5

Before opening statements, the district court instructed the jury that "the defendant begins with the presumption of innocence . . . and so a defendant comes into a courtroom with really a totally clean slate." After closing arguments, the district court again instructed the jury on these concepts. Thus, under Robinson, the district court committed no error.

V.

Finally, Ms. Hicks contends that there is insufficient evidence in the record demonstrating that the crack she possessed was for distribution. The jury's verdict "must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." Glasser v. United States, 315 U.S. 60, 62 (1942) (citations omitted). Thus, we may reverse a jury verdict only if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt. See United States v. Lowe , 65 F.3d 1137, 1142 (4th Cir. 1995), cert. denied, 117 S. Ct. 49 (1996).

In this case, there was ample evidence from which the jury could find beyond a reasonable doubt that Ms. Hicks knowingly possessed the crack with intent to distribute it. The "[i]ntent to distribute may be inferred from the possession of . . . a quantity of drugs larger than needed for personal use." United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990), cert. denied, 500 U.S. 919 (1991). Amounts as small as 5.72 grams of crack have been found to be consistent with distribution. See United States v. LaMarr, 75 F.3d 964, 973 (4th Cir.), cert. denied, 117 S. Ct. 358 (1996). We have also recognized that "crack is normally distributed in doses of 1/10 of a gram and that a person ingesting a dose daily would be considered a `strong' user." Id. Ms. Hicks had 21.771 grams of crack-- enough for more than 200 days at doses sufficient for a strong user. Thus, we find that the jury had ample evidence to conclude Ms. Hicks possessed crack with intent to distribute it.

Conclusion

For the aforementioned reasons, we affirm the judgment of the district court.

AFFIRMED

6