[Cite as *State v. Bolds*, 2013-Ohio-2355.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2012CA00187 |
| ORION BOLDS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Stark County Court of
                                Common Pleas, Case No. 2012CR0759


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         June 3, 2013


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant


JOHN D. FERRERO,                      STEVEN A. REISCH
PROSECUTING ATTORNEY,                 Stark County Public Defenders Office
STARK COUNTY, OHIO                    200 West tuscarawas St., Suite 200
                                      Canton, Ohio 44702
By: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702-1413

*Hoffman, P.J.*

{¶1} Defendant-appellant Orion Bolds appeals the September 6, 2012 Judgment Entry entered by the Stark County Court of Common Pleas denying his motion to suppress evidence. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On May 7, 2012, the Canton Police Department responded to a call of a person brandishing a weapon. The caller stated a black male, wearing a red hooded sweatshirt was waving a handgun and screaming at other individuals in the area. Officer Richard Hart of the Canton Police Department was within the area, and responded to the call. As Officer Hart approached the 1000 block of Fulton Avenue, he witnessed a black male, wearing a red hooded sweatshirt and gray pants walking around with his hands inside his pants. He ordered him to show him his hands and to come to the front of his cruiser.

{¶3} Appellant was placed in handcuffs for the Officer's safety, and Officer Hart initiated a pat-down search during which a baggie fell from Appellant's pant leg. Prior to initiating the pat-down, Officer Hart grabbed Appellant's pants to pull them up pursuant to his common practice.

{¶4} Appellant was indicted on one count of possession of cocaine. Appellant filed a motion to suppress the evidence. Via Judgment Entry of September 6, 2012, the trial court denied the motion to suppress the evidence. Appellant then entered a plea of no contest to the charge. The trial court convicted Appellant of the charge, and entered sentence accordingly.

{¶5} Appellant now appeals, assigning as his sole error:

**{¶6}** "I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE FOUND DURING A SEARCH WHICH EXCEEDED THE SCOPE OF A PAT-DOWN SEARCH."

**{¶7}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

**{¶8}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams,* supra. Finally,

an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶9} In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held a limited pat-down search is justified when an officer reasonably concludes the individual, whose suspicious behavior he is investigating at close range, may be armed and, thus, dangerous to the police officer and others. *Id.* at 24. Officers need not forsake reasonable precautionary measures during the performance of their duties. *State v. Evans,* 67 Ohio St.3d 405, 410, 618 N.E.2d 162 (1993). The court must determine whether the officer had a reasonable, objective basis for frisking the suspect. See, *State v. Andrews,* 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). In determining whether an officer's beliefs are reasonable, a court must consider the totality of the circumstances involved in the stop. *State v. Bobo,* 37 Ohio St.3d 177, 180, 524 N.E.2d 489 (1988). An officer need not testify he was actually in fear of a suspect, but he must articulate a set of particular facts which would lead a reasonable person to conclude a suspect may be armed and dangerous. *Evans,* supra, at 413.

{¶10} The Second District Court of Appeals held in *State v. Rutledge* (Feb. 27, 1998), 2nd Dist. No. 16577,

{¶11} "In order to be reasonable, the scope of a *Terry* weapons search must be minimally intrusive in relation to the particular suspicions that occasion it. However, the *Terry* court declined to adopt specific limitations for those searches, preferring instead

to allow those limitations 'to be developed in the concrete factual circumstances of individual cases.' *Id.,* at p. 29. \*\*\* A defendant who files a motion to suppress is not, however, precluded from presenting evidence through cross-examination or otherwise to show that those suspicions could in the particular circumstances involved have reasonably been resolved by an examination of the exterior of a purse. In that event, the officer's further inspection of the interior of the purse could be unreasonable, requiring suppression of articles found within it.

{¶12} "We have no record from which to know the appearance of the purse that the Defendant-Appellant carried when Officer Hursh approached her and asked to look inside. Therefore, we cannot determine whether a manipulation or other examination of the exterior of the purse would reasonably have resolved the officer's suspicions that she had a gun inside. As in *Terry,* 'the record evidences the tempered act of a policeman who in the course of an investigation had to make a quick decision as to how to protect himself and others from possible danger, and took limited steps to do so.' *Id.,* at p. 28. Therefore, we cannot find that the inspection of the interior of the purse that Officer Hursh performed was unreasonable under the circumstances."

{¶13} "\*\*\*

{¶14} "An officer is always authorized to search an area or object within a detainee's immediate access for weapons the officer reasonably suspects the detainee may have and use against him when the officer is otherwise authorized to detain the person for investigation or arrest. *United States v. Riggs,* 474 F.2d 699 (2d Cir.), *cert. denied,* 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973); *United States v. Poms,* 484 F.2d 919 (4th Cir., 1973). Therefore, when an officer reasonably suspects that a

weapon is inside a purse that a detainee is carrying, he may look inside the purse to neutralize the threat to him and others that the weapon presents, unless his suspicion can reasonably be resolved by a less intrusive form of inspection. *United States v. Vigo* 487 F.2d 295 (2d Cir.1973); *State v. Fisher* (June 9, 1992), Montgomery App. No. 12978, unreported."

{¶15} Officer Hart testified at the August 1, 2012 Suppression Hearing,

{¶16} "Q. How did you - - explain or demonstrate the pat down for the Court.

{¶17} "A. Yes.  When I handcuffed him I was standing fairly close to him.  I wrapped my hands around his front and did a pat down of his waist area and then I moved up to check his shoulders, under his arms, down the sides, around the front and then patted down his legs as I moved down.

{¶18} "Q. And the way you are demonstrating that, your hands are open, they are not clenched at all?

{¶19} "A. That's correct.

{¶20} "Q. Did you do anything else with his clothing or anything like that?  Did you do anything different than what you just described?

{¶21} "A. When I first walked up behind him I did grab his pants and pull them up to make sure that they are up properly.

{¶22} "Q. Where were his pants?

{¶23} "A. They were below his waistline, probably four to six inches.

{¶24} "Q. When you are saying below his waist, was the waist of his pants down around his the top of his thigh?

{¶25} "A. That's correct.

**{¶26}** "Q. Why did you pull up his pants?

**{¶27}** "A. It's common practice.

**{¶28}** "Q. What are you attempting to do when you pull up his pants? Why do you do that?

**{¶29}** "A. To make sure his pants are up properly and to make sure that there is nothing possibly concealed in his groin or in his waistband.

**{¶30}** "Q. This a pat down - - you can have a seat. This is a pat down for weapons?

**{¶31}** "A. Correct.

**{¶32}** "Q. Is there concern that an individual might carry a weapon in his groin or crotch area?

**{¶33}** "A. Yes. I've recovered multiple handguns from subjects over the years.

**{¶34}** "Q. And if an individual's pants are sagging or drooping down, is that an effort to conceal a handgun, would that be easier to conceal a handgun in the crotch area or the groin area?

**{¶35}** "A. Possibly.

**{¶36}** "Q. You stated you went down his legs and you continued with the open hand pat down; is that correct?

**{¶37}** "A. Correct."

**{¶38}** Tr. at 11-13.

**{¶39}** We find the Officer's search initiated by pulling up Appellant's pants to his waist was minimally intrusive and done to facilitate the search for weapons. The officer testified the waist of Appellant's pants were down around the top of his thigh. Officer

Hart was responding to a call of a person waiving a handgun at persons nearby, and he had recently observed Appellant with his hands in his pants.  The cocaine was found incident to the process as it dropped down from Appellant's pants rather than as a result of being felt by the officer during the pat down.  We find the trial court did not err in denying Appellant's motion to suppress the evidence.

{¶40} The September 6, 2012 Judgment Entry entered by the Stark County Court of Common Pleas denying Appellant's motion to suppress is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur

s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise _____
HON. JOHN W. WISE


s/ Craig R. Baldwin _____
HON. CRAIG R. BALDWIN

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ORION BOLDS | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2012CA00187 |

For the reasons stated in our accompanying Opinion, the September 6, 2012 Judgment Entry entered by the Stark County Court of Common Pleas is affirmed. Costs to Appellant.


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise _____
HON. JOHN W. WISE


s/ Craig R. Baldwin_____
HON. CRAIG R. BALDWIN